# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX CICCOTELLI, | Case No. _____ |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| NEOPHOTONICS CORPORATION, TIMOTHY S. JENKS, CHARLES J. ABBE, BANDEL CARANO, KIMBERLY Y. CHAINEY, YANBING LI, RAJIV RAMASWAMI, SHERI L. SAVAGE, MICHAEL J. SOPHIE, and IHAB TARAZI, | **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |
| Defendants. | |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1. On November 3, 2021, NeoPhotonics Corp. ("NeoPhotonics" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with Marlin Parent, Inc. ("Parent") and Marlin Merger Sub, Inc. ("Merger Sub") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, NeoPhotonics' stockholders will receive $16.00 in cash per share.

3. On December 1, 2021, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 15 U.S.C. § 78aa because the Proxy, which plaintiff alleges to be materially false and misleading, was transmitted by defendants into this District, including to plaintiff, who resides in this District. *See, e.g., Wojtunik v. Kealy*, 2003 WL 22006240, at *5-6 (E.D. Pa. Aug. 26, 2003).

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of NeoPhotonics common stock. Plaintiff is a resident of this District.

9. Defendant NeoPhotonics is a Delaware corporation. NeoPhotonics' common stock is traded on the New York Stock Exchange under the ticker symbol "NPTN."

10. Defendant Timothy S. Jenks is President, Chief Executive Officer, and Chairman of the Board of Directors of NeoPhotonics (the "Board").

11. Defendant Charles J. Abbe is a member of the Board.

12. Defendant Bandel Carano is a member of the Board.

13. Defendant Kimberly Y. Chainey is a member of the Board.

14. Defendant Yanbing Li is a member of the Board.

15. Defendant Rajiv Ramaswami is a member of the Board.

16. Defendant Sheri L. Savage is a member of the Board.

17. Defendant Michael J. Sophie is a member of the Board.

18. Defendant Ihab Tarazi is a member of the Board.

19. Defendants identified in ¶¶ 10-18 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

20. NeoPhotonics is a leading developer and manufacturer of lasers and optoelectronic solutions that transmit, receive, and switch high-speed digital optical signals for Cloud and hyper-scale data center internet content providers and telecom networks.

21. On November 3, 2021, NeoPhotonics entered into the Merger Agreement.

22. The press release announcing the Proposed Merger provides as follows:

Lumentum Holdings Inc. (NASDAQ: LITE) ("Lumentum") and NeoPhotonics Corporation (NYSE: NPTN) ("NeoPhotonics") today announced that they have entered into a definitive agreement under which Lumentum will acquire NeoPhotonics for $16.00 per share in cash, which represents a total equity value of approximately $918 million. The transaction has been unanimously approved by the Boards of Directors of both companies.

The addition of NeoPhotonics expands Lumentum's opportunity in some of the fastest growing areas of the more than $10 billion market for optical components used in cloud and telecom network infrastructure. The integrated company will be better positioned to serve the needs of a global customer base who are increasingly utilizing photonics to accelerate the shift to digital and virtual approaches to work and life, the proliferation of IoT, 5G, and next-generation mobile networks, and the transition to advanced cloud computing architectures. The combination creates a stronger partner for customers, with the ability and intent to invest strongly in innovation and manufacturing capacity.

"With NeoPhotonics, we're making another important investment in better serving our customers and expanding our photonics capabilities at a time when photonics are at the forefront of favorable long-term market trends," said Alan Lowe, Lumentum President and CEO. "At the center of our strategy is a relentless focus on developing a differentiated portfolio with the most innovative products and technology in our industry so that we can help our customers compete and win in

their respective markets. Adding NeoPhotonics' differentiated products and technology and innovative R&D team is consistent with this strategy and together, we will better meet the growing need for next generation optical networking solutions."

"We are confident this transaction will make us an even better partner to our customers, while enabling our team to deliver significant, long-term value to our stockholders. We look forward to welcoming NeoPhotonics' talented team of employees to Lumentum," concluded Mr. Lowe.

"Today's announcement is an exciting milestone for NeoPhotonics," said Tim Jenks, NeoPhotonics President, CEO, and Chairman. "The increasing global demand for our ultra-pure light tunable lasers and photonics technologies for speed over distance applications is more apparent than ever, and Lumentum is the ideal partner to serve our customers on a larger scale. Lumentum recognizes the importance of NeoPhotonics' differentiated photonic technology and products, which are well positioned for accelerated growth in the coming years. The combination's complementary product portfolio, increased scale, breadth of customer application knowledge, and R&D capabilities will accelerate innovation, better serve customers, and deliver significant and immediate value to our stockholders. Importantly, this transaction is a testament to the hard work and dedication of our employees. I look forward to working with Lumentum leadership to ensure a smooth transition as we begin an exciting new chapter as one company."

**Compelling Strategic and Financial Benefits**

**Comprehensive Capabilities for the Significant 400G+ Optical Network Opportunity:** The complementary combination accelerates Lumentum's exposure to and penetration of some of the fastest growing portions of the more than $10 billion market for optical components used in cloud and telecom network infrastructure. Internet, cloud, mobile, and broadband access network capacity requirements continue to grow at an unrelenting pace driven by the digital transformation of work and life, high-bandwidth video, gaming, and other applications. The combined company will have a broader portfolio of next generation products and technologies addressing the market opportunity created by the strong growth in network capacity requirements created by these applications.

**Positioned to Better Serve Market Leading Customers:** The combined company will comprise a solid financial position and the ability to invest in new products, technologies, and manufacturing capabilities, with a broader portfolio of products and technology relevant to global leaders in cloud and communications networks infrastructure. This transaction underscores Lumentum's commitment to the photonics and communications markets, and the combined company will continue to heavily invest in innovation and manufacturing capabilities in order to meet and exceed customers' photonics needs – today and into the future.

4

**Accelerated Innovation from Combined R&D and Technology Capabilities Globally:** The combination increases the scale and scope of Lumentum's innovation engine globally. The company will benefit from R&D and manufacturing capabilities globally across Asia, North America, and Europe. With a broader global talent pool, Lumentum will be well positioned to accelerate innovation and collaborate more closely with market and technology-leading customers worldwide.

**Poised to Capture Attractive New Growth Opportunities:** Photonics will play an increasing role in new approaches to automobiles and delivery vehicles, manufacturing, industrial sensing, safety and security, health care and the life sciences, and addressing climate change. The combined organization will be poised to capture new market growth opportunities created by these trends due to the combined R&D innovation engine and technology base. The combination's breadth of technology and vertical integration, from underlying components and materials to sub-systems and systems, increases the ability to participate in the technology stack of new end market customers increasingly utilizing photonics.

**Delivers Substantial Run-Rate Synergies and Solid Accretion to Lumentum's Earnings**: There are significant efficiency gains in combining derived from increased scale, reducing redundancies, and leveraging the best capabilities in the combination. The combined company is expected to generate more than $50 million in annual run-rate synergies within 24 months of the closing of the transaction. The transaction is expected to be immediately accretive to the combined company's non-GAAP earnings per share upon closing. The combined company is expected to have a solid balance sheet and strong operating cash flows, creating substantial financial flexibility to pursue continued growth initiatives.

### Transaction Terms, Financing, and Approvals

The purchase price represents a premium of approximately 39% to NeoPhotonics' closing stock price on November 3, 2021. Lumentum intends to finance the transaction through cash from the combined company's balance sheet.

Related to the transaction, Lumentum will provide up to $50 million in term loans to NeoPhotonics to fund anticipated growth, which may require increased working capital and manufacturing capacity.

The transaction is expected to close in the second half of calendar year 2022, subject to approval by NeoPhotonics' stockholders, receipt of regulatory approvals, and other customary closing conditions.

### Advisors

Goldman Sachs & Co. LLC served as the exclusive financial advisor to Lumentum and Wilson Sonsini Goodrich & Rosati, Professional Corporation served as legal advisor. Union Square Advisors LLC served as exclusive financial advisor to NeoPhotonics and Cooley LLP served as legal advisor.

23. On December 1, 2021, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

Financial Projections

24. The Proxy fails to disclose material information regarding NeoPhotonics' financial projections, specifically: the line items underlying the financial projections.

Financial Analyses

25. The Proxy fails to disclose material information regarding the financial analyses conducted by Union Square Advisors LLC ("Union Square").

26. Regarding Union Square's Selected Publicly Traded Company Analysis, the Proxy fails to disclose the individual multiples for the companies utilized by Union Square.

27. Regarding Union Square's Premiums Paid Analysis, the Proxy fails to disclose: (i) the transactions utilized by Union Square; and (ii) the premiums paid in the transactions utilized by Union Square.

28. Regarding Union Square's Precedent Transactions Analysis, the Proxy fails to disclose the individual multiples for the transactions utilized by Union Square.

29. Regarding Union Square's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the terminal values utilized by Union Square; (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates utilized by Union Square; and (iii) the Company fully diluted shares outstanding utilized by Union Square.

30. Regarding Union Square's Research Analyst Price Targets for NeoPhotonics Corporation Analysis, the Proxy fails to disclose: (i) the price targets utilized by Union Square; and (ii) the sources of the price targets.

<u>Banker Engagement</u>

31. The Proxy fails to disclose the timing and details of any prior services Union Square conducted for NeoPhotonics' and/or its affiliates and the fees received by Union Square for providing any such prior services.

## COUNT I

**Claim Against the Individual Defendants and NeoPhotonics for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

32. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

33. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

34. NeoPhotonics is liable as the issuer of these statements.

35. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

36. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

38. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information

reasonably available to stockholders.

39. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

40. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

41. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

42. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of NeoPhotonics within the meaning of Section 20(a) of the Exchange Act as alleged herein.

44. Due to their positions as officers and/or directors of NeoPhotonics and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

47. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

48. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

49. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

50. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

51. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  December 23, 2021

                                       **GRABAR LAW OFFICE**

                                 By: _/s/ Joshua H. Grabar_
                                    Joshua H. Grabar (#82525)
                                    One Liberty Place
                                    1650 Market Street, Suite 3600
                                    Philadelphia, PA 19103
                                    267-507-6085
                                    jgrabar@grabarlaw.com

                                    *Counsel for Plaintiff*